Per Curiam.
 

 Ward sued Snodgrass in the County Court of Carter, in an action of trespass, for prostrating and destroying his trees. The defendant pleaded not guilty; and secondly, that the place where, &c., belonged to the father of Snodgrass, who entered by his father’s command, which is the same trespass, &c. Replication that the place where, &c., was the soil and freehold of the plaintiff, and not the close of James Snodgrass; and that the defendant did not enter the close, &c., as his servant; upon this issue is joined. Verdict for the plaintiff, and judgment, and the defendant appealed to the Circuit Court. In September term, 1816, there was a verdict in the Circuit Court for the plaintiff, a bill of exceptions was filed, an appeal taken to this court, and
 
 *34
 
 errors * assigned. The bill of exceptions states a deed produced by the plaintiff, on the trial, from Johnsonato him, for 640 acres of land. This land, it was proved, the plaintiff purchased from John Wills, who had a deed from Johnson, unregistered. Johnson, at the request of Wills, took back this deed, and conveyed the same lands to the plaintiff. It was also proved that this land joined a hundred acres called the Cat-tail Meadow, on which hundred acres the defendant’s father and said Wills erected a forge in partnership; before which partnership Wills had purchased the said 640 acres. That Snodgrass used it for some years, cutting timber on it for the forge, Wills acquiescing. On this tract of 640 acres, the trespass declared of was committed. Whilst the title was in Wills, articles were made between the father and Wills, for erecting said iron works, dated the 16th of April,' 1808, by which Wills' is to convey to Snodgrass the one half of five acres of land, part of a 100 acres, called the Cat-tail Meadow; and amongst others, there is a clause “ that Snodgrass shall have free privilege of timber necessary for coal and building, that may be requisite for said works, for his part of the same likewise,” &c. The defendant offered in evidence two depositions, which the court rejected. These depositions explained the articles so as to make them comprehend the- 640 acres, as part of the land on which Snodgrass was to take timber. Evidence describing the property where a deed speaks of property contracted about, is admissible to enable the court to apply the deed to it or not, according to the words of the deed ; but it is not admissible to show that the meaning of the terms contained in the deed extends to it or not. Therefore the depositions were properly rejected, and the evidence to show the local situation of the 640 acres, and other parts of its description, was proper. The court is of opinion that the words of this article did extend to the 640 acres, for that and the 100 acres * were all one tract at the date of theSe articles. Timber requisite, &c., does not confine him to any particular part of the land, but leaves him at liberty to take it from any part. He might as well be confined to the 640 as the 100, and thus alternately he could be excluded from both. But when we have progressed thus far, what next is to be done ? These articles do not give an interest in the lands; they only make Wills personally liable for a breach; and if he convey the land to a third person, it is in
 
 *35
 
 his hands exclusively; his own against all mankind, the articles notwithstanding; and he can maintain an action against any who shall trespass upon it. The defendant’s remedy is upon his articles against Wills.
 

 Judgment for the plaintiff in the Circuit Court.
 

 See, as to
 
 latent ambiguity, McCorry
 
 v.
 
 King,
 
 3 Hum. 267;
 
 Ward
 
 v.
 
 Espy,
 
 6 Hum. 447; King’s Digest, 6039-43.